[Civ. No. 20431. Second Dist., Div. One. Feb. 21, 1955.]

J. W. SHAMEL, Appellant, v. LITE PRODUCTS SALES, INC. (a Corporation) et al., Respondents.

J. W. SHAMEL, Appellant, v. LIGHT RENTAL AND SUPPLY, INC. (a Corporation) et al., Respondents.

C. P. Von Herzen, Samuel L. Laidig and Julius A. Leetham for Appellant.

Dunlap, Holmes, Ross & Woodson for Respondents.

DORAN, J.—Two separate actions under section 2236 of the Corporations Code were instituted by appellant to determine the validity of election of directors of two corporations. These actions were consolidated for trial, and after taking the matter under submission, respondents' motion for nonsuit was granted, from which judgment appellant now appeals.

## CASE No. 615707

Lite Products Supply Corporation, later named Lite Products Sales, Inc., was incorporated in California on October 6, 1950, and the outstanding capital stock of 500 shares issued, pursuant to permit, was issued in the name of appellant Shamel, and escrowed with J. G. Moser. No application for transfer of any of such stock was made.

On April 30, 1952, appellant gave to Moser, attorney for the corporation, a signed letter stating that "Although stock . . . has been issued in escrow and stands in my name, I hereby transfer, set over and assign to you (respondent Metcalf) fifty-one percent (51%) of such stock and I specifically designate that you are the owner thereof. 2. Should any additional stock be issued . . . it shall be issued on the basis of fifty-one percent (51%) to you and forty-nine (49%)

to me. . . . The consideration for the foregoing is the moneys heretofore advanced by you to both companies by way of loan, in accordance with the understanding between us at the time such moneys were advanced.''

A stockholders' meeting was held on February 16, 1953, and the minutes of this meeting, introduced in evidence by appellant, recite that petitioner Shamel and respondent Metcalf were present; that the attorney explained the stockholders' voting rights, but stated that ''he was not in a position to give anyone the answer as to what the court's opinion might be as to the value of the paper (letter) held by Mr. Metcalf. It was, nevertheless, unnecessary in view of the statement of Mr. Metcalf. Mr. Shamel consented to the foregoing and Mr. Metcalf then called for nominations.''

The minutes of the meeting further recite, as stated in respondents' brief, that petitioner ''nominated himself and Metcalf, Watson, Martin and Tucker; that Metcalf nominated Coleman; . . . that in the subsequent voting petitioner voted for himself and Watson as directors; that Metcalf voted for himself, Tucker and Coleman; that Metcalf announced the election of himself, Coleman, Tucker, Petitioner and Watson as directors.''

At the trial appellant, after reading the minutes, denied signing any waiver of notice or consent to the holding of the meeting, and stated that ''he did not elect Coleman and Tucker as directors,'' but voted for Metcalf, appellant, Watson and Martin, and denied giving consent at any time to the holding of the meeting.

Appellant contends that ''Metcalf assumed effective control of both corporations and voted in new and additional directors''; that appellant ''voiced his objections'' to the proceedings and to the nominations, and was thereafter ''effectively excluded or 'locked out.' '' Appellant's reply brief asserts that there was evidence that ''All the stock had been issued to petitioner. None of the stock had been transferred out of petitioner's name''; and that ''The documentary evidence (letter) upon which respondents rely as justification for their alleged usurpation was not established as effective by reason of the fulfillment of necessary conditions''; consequently that the nonsuit should not have been granted.

Respondents answer these contentions with the argument that appellant may not contest the election of directors because (1) petitioner himself initiated and sponsored the events which justified Metcalf in claiming the right to vote

51 per cent of the stock; (2) petitioner attended and participated in the meeting and in the election; (3) petitioner, by positive acts acquiesced in said election; and (5) said letter, Exhibit 5, constitutes a valid transfer or proxy authorizing Metcalf to vote 51 per cent of the stock. It is further contended that, under section 832, Corporations Code, the minutes of the meeting are "prima facie evidence of the . . . due holding of such meetings, and of the facts or actions stated therein," and the burden was on the petitioner to prove the minutes erroneous.

The order of the trial court granting a nonsuit reads: "The remedy invoked by plaintiff in these cases involves questions of dissipation of assets, possible fraud, equitable rights, complex accounting, and other issues which could not possibly be within the purview of the legislature in providing a summary remedy to determine validity of an election of directors. Whatever dubious legal validity may attach to the attempted transfer of the voting rights to a portion of escrowed stock, without permit, the fact remains that the act was freely performed by plaintiff and he acquiesced therein throughout the various meetings and elections now contested."

As hereinbefore indicated, the burden of proving any irregularity in the election of directors rested upon petitioner's shoulders. In this connection Mr. Shamel was obliged to rebut the presumption of regularity and correctness created by the minutes of the meeting in question. Notwithstanding appellant's assertions of failure to give proper notice, the record discloses that appellant not only attended the meeting but actually nominated directors and voted therefor. Such active participation must be deemed, as the trial court indicated, a waiver of any preceding irregularities. That the election did not result as appellant might have desired is of no importance.

Appellant's contention is that Metcalf's voting of 51 per cent of the stock was abortive because Metcalf was not a stockholder of record, all of the stock being issued and escrowed in appellant's name, and that no transfer of any part thereof had been authorized. In this connection, however, it will be recalled that appellant was the person directly responsible for this state of affairs. As said in respondents' brief, appellant can hardly "repudiate his own acknowledgment (by letter) that Metcalf was the owner of 51% of the stock at the time Metcalf voted it," which letter was at least

a proxy or voting right giving Metcalf authority to vote 51 per cent of the stock. Viewing the evidence in the most favorable light, this was the situation reflected by appellant's evidence at the time respondents moved for a nonsuit. In this state of the record, the granting of such a motion cannot be deemed reversible error.

## CASE No. 615708

This case involves a similar situation concerning another corporation known as Light Rental and Supply, Inc. "Light Rental," as this corporation is denominated, was incorporated on August 3, 1951. On May 15, 1952, its officers were directed to apply for a permit to sell and issue 20 shares of stock to: Metcalf, 10 shares; Shamel, 9 shares; and Moser, 1 share. However, these directions were not followed, and no stock was issued.

Petitioner and the other directors signed a waiver of notice and consent to the holding of a directors' meeting on February 10, 1953. The minutes of this meeting recite that Shamel, Metcalf, Moser, and Martin, all directors, were present; that Mader, the fifth director had resigned, and that Moser then resigned as director; that "it was deemed advisable that a new Board of Directors be elected at this meeting." Nominations were then made by appellant and others, and Watson, Shamel, Metcalf, Tucker and Coleman were elected; thereafter, Metcalf, Tucker and Coleman were elected as president, vice-president and secretary, appellant "dissenting." Tucker was then elected general manager, appellant opposing, "for himself and Mr. Watson."

The record indicates that although the attorney, Moser, was not sure of the position of the corporation in view of the fact that no stock had been issued, "he assumed that that is the way it would be all right, so we carried on," according to appellant's testimony; that appellant participated in the meeting, made nominations and voted; that "I didn't know the legal phase of this thing and the attorney wasn't in a position to give me any definite ruling on it"; that "in petitioner's opinion Metcalf was attempting to vote stock that he shouldn't; that petitioner protested the attempt to elect Tucker and Coleman."

The situation, then, in the words of respondents' brief, is that after the resignation of two directors, Moser and Mader, the other directors, appellant, Metcalf and Martin, "proceeded to attempt to elect a full slate of five directors on the

assumption that they had authority to do so. But they had authority only to fill vacancies. (Corp. Code, § 808.) The election resulted in no change in the status of petitioner and Metcalf who were 'reelected.' Three new directors—Watson, Tucker and Coleman—were declared elected, leaving out Martin, who was not nominated for reelection and who participated in the voting that superceded her. She is not complaining of her supercedure.''

■ What has been heretofore said in reference to the stockholders' meeting of Lite Products Sales, Inc. applies with equal force to the directors' meeting of Light Rental and Supply, Inc. just discussed. The record here, as in the other case, does not bear out the contention that appellant was improperly ''excluded or 'locked out' of the two corporations.'' On the contrary, at the time the motion for a nonsuit was made, appellant's own evidence led only to the conclusion that the directors' meeting in question was duly held pursuant to waiver and consent signed by all directors including the appellant; that appellant freely participated in the meeting by making nominations and voting with what must have been full knowledge of the consequences of which complaint is now made. As said in the respondent's brief, ''every act of petitioner in said proceeding was given full effect; no act of petitioner was frustrated.'' Such a showing on the part of one who carried the burden of proof amounted to an almost complete failure of proof, and under such circumstances a trial court would be amply justified in granting a nonsuit.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 20, 1955.