[Civ. No. 27217. Fourth Dist., Div. Two. June 25, 1982.]

SAM S. SPENCER et al., Plaintiffs and Appellants, v.
BARBARA T. OLDER et al., Defendants and Respondents.

**COUNSEL**

Richards, Watson, Dreyfuss & Gershon, Glenn R. Watson and Burton Mark Senkfor for Plaintiffs and Appellants.

Hahn, Cazier & Leff, Julian A. Pollok, Hayes & Hoegh and Richard B. Hoegh for Defendants and Respondents.

**OPINION**

**MORRIS, P. J.**—This case involves a dispute over the control of the five-member board of directors of the Spencer Older Corporation. The Spencer family and the Older family own 50 percent each of the corpo-

ration's stock and each family claims that its representative holds the decisive fifth seat on the otherwise evenly divided board. The Spencers brought this action pursuant to section 709 of the Corporations Code, which requires the superior court to determine the validity of any election of a director. The trial court ruled in favor of the Olders. We reverse.

FACTS

A special meeting of the shareholders of the Spencer Older Corporation was called for December 20, 1979. At that time, the corporation's board of directors was composed of Sam Spencer, Robert Spencer and Robert Older. The other two seats on the five-member board were then vacant. The Olders, owners of half of the corporation's stock, showed up for the December 20 meeting. The Spencers, owners of the other half of the stock, did not. Instead, the Spencers on that day executed a certificate of election to wind up and dissolve the corporation. Because a majority of the shares were not represented at the meeting, there was no quorum and no business could be transacted. (Corp. Code, § 602.)[1] With Robert Older, the corporation's secretary, acting as chairman, a resolution was adopted adjourning the special shareholders' meeting "to just prior to (and at the same place as) the next meeting of the shareholders and/or the Board of Directors of Spencer Older Corporation and/or Pacific Seaboard Investment Corporation [another corporation owned by the Spencers and Olders]." No notice of this adjournment resolution was given to the absent Spencers.

Following the December 20 quorumless special shareholders' meeting, Sam Spencer, the corporation's president, called a special meeting of the board of directors for January 3, 1980. Minutes before the directors, meeting was to start, Robert Older announced that he was reconvening the shareholders' meeting pursuant to the adjournment resolution. Furthermore, he stated that he was acting as chairman of the shareholders' meeting. Robert Older then announced that there would be an election of directors and appointed Ralph Cassady, an attorney, as inspector of the election. Although taken by surprise by and objecting to the reconvening of the shareholders' meeting, the Spencers nonetheless participated in the election.

The Spencers and the Olders each had 12,500 votes. The Spencers' ballots gave 4,166-2/3 votes each to Sam Spencer, Robert Spencer and

---

[1]All statutory references are to the Corporations Code unless otherwise stated.

Kenneth Coleman. The Olders' ballot gave 4,167 votes each to Charles Older and Barbara Older and 4,166 votes to Robert Older. However, at the bottom of the Older ballot, Robert Older wrote, "I am voting on the assumption that my votes may not be fractionalized. However, if my votes can be fractionalized I wish to divide my votes equally between Charles H. Older, Robert T. Older and Barbara T. Older."

Immediately following the conclusion of the reconvened special shareholders' meeting, the special directors' meeting was held with Sam Spencer presiding.[2] He announced that the just completed shareholders' election of directors was invalid and that the two vacancies on the board would be filled by the vote of the then current board consisting of Sam Spencer, Robert Spencer, and Robert Older.[3] To no one's surprise, the Spencers outvoted Robert Older, electing Kenneth Coleman and Sam Shabo as directors.

One week after the shareholder voting, Cassady issued his "Report of Inspector of Election." Determining that fractionalized voting was improper, Cassady invalidated the two and two-third fractionalized votes cast for each of the three Spencer candidates[4] and announced the election results as follows:

| | | |
|---|---|---|
| Charles Older | — | 4167 |
| Barbara Older | — | 4167 |
| Robert Older | — | 4166 |
| Sam Spencer | — | 4164 |
| Robert Spencer | — | 4164 |
| Kenneth Coleman | — | 4164 |

With the critical Spencer fractionalized votes not counted, the Olders controlled the corporation's board of directors.

[2]The parties have stipulated only that the special directors' meeting did in fact take place. They further stipulated, however, that "[t]here is a disagreement among the parties as to what happened at the meeting." What purportedly occurred appears only from a declaration of Sam Spencer. Nothing in the record contradicts Sam Spencer's account, but there is no support for it either. The trial court's findings of fact and conclusions of law do not discuss the special directors' meeting.

[3]Section 305, subdivision (a) allows vacancies on the board to be filled "by a majority of the directors then in office, whether or not less than a quorum, or by a sole remaining director."

[4]The Spencers fractionalized a total of eight votes, two and two-third votes per candidate. For some reason that is undisclosed in the record, the Spencers cast four separate ballots at the election. Ballot one, cast by Sam Spencer, gave each of the three Spencer candidates 416-2/3 votes. Ballot two, cast by Robert Spencer, also gave each Spencer candidate 416-2/3 votes. Ballot three, cast by Sam Spencer, gave each Spen-

Three months later, on April 9, 1980, another directors, election was held, this time at the regularly scheduled annual shareholders' meeting. The results of this election were as follows:

| | | |
|---|---|---|
| Charles Older | — | 4167 |
| Robert Older | — | 4167 |
| Sam Spencer | — | 4167 |
| Robert Spencer | — | 4167 |
| Barbara Older | — | 4166 |
| Kenneth Coleman | — | 4166 |

Thus, two Spencers and two Olders were clearly elected as directors, and Barbara Older and Kenneth Coleman (the Spencer candidate) were tied for the fifth and final seat. Cassady, again acting as election inspector, concluded that Barbara Older was entitled to the fifth seat as a holdover director, since she, but not Coleman, had been previously elected to the board. The Spencers, disputing the validity of Barbara Older's prior election, claim that Coleman had been previously selected as a director, at the special directors' meeting, and that Coleman is therefore entitled to the fifth seat as a holdover director.

## Discussion

Since both sides agree that the tie vote resulted in the holdover of the incumbent director,[5] the validity of Barbara Older's election to the board at the January 3 reconvened shareholders' meeting is of primary significance. The Spencers contend that the election was not valid because the meeting was not properly reconvened, Robert Older improperly chaired the meeting, and the votes at that meeting were not correctly counted. The trial court held that Barbara Older was validly elected at the January 3 meeting and was thus the incumbent at the April 9 election. ■ We reverse, because we conclude that the special shareholders' meeting could not reconvene on January 3 without notice being given to the shareholders.[6]

---

cer candidate 1,666-2/3 votes. Ballot four, cast by Robert Spencer, gave each Spencer candidate 1,666-2/3 votes. Thus, each Spencer candidate received a two-thirds fractionalized vote on each of the four ballots, a total of two and two-third votes per candidate.

[5] Section 301, subdivision (b) states, "Each director, including a director elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified." Since a tie vote does not elect and qualify a successor, the incumbent continues to hold office as a holdover director until ousted.

[6] We express no opinion on the other issues raised by the parties.

Section 601, subdivision (d) reads in pertinent part, "When a shareholders' meeting is adjourned to another time or place, unless the bylaws otherwise require and except as provided in this subdivision, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken .... If the adjournment is for more than 45 days or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each shareholder of record entitled to vote at the meeting." When the quorumless special shareholders' meeting of December 20 adjourned, it adjourned "to just prior to (and at the same place as) the next meeting of the shareholders and/or the Board of Directors of Spencer Older Corporation and/or Pacific Seaboard Investment Corporation." This adjournment resolution was not sufficiently specific as to the time and place of the adjourned meeting to excuse the giving of notice of the meeting.

The law requires notice of an adjourned meeting if, inter alia, the "time and place" of that meeting are not announced at the meeting at which the adjournment is taken. Although not so precisely stated, we believe that the Legislature intended that the time and place announcement be of a specific date and location, not of a future event. The shareholder attending the meeting at which the adjournment is taken, or the absent shareholder who reads the minutes of that meeting, must be able to determine the time and place of the adjourned meeting from the announcement alone. If the announcement does not provide this minimum information, it is tautological that an announcement of the time and place of the adjourned meeting has not been made. The adjournment resolution in the present case was insufficient because it required the shareholders to consult four additional sources of information (i.e., notices of the next shareholders' and directors' meetings of two corporations) to learn the time and place of the adjourned meeting. Section 601, subdivision (d) thus required notice of the adjourned meeting to be given.[7]

---

[7]The Olders assert that "it is ludicrous to argue that in a corporation having essentially two shareholders (the Spencers and the Olders) such formality should be required." The Legislature, however, has not distinguished between corporations on the basis of size concerning the adjournment rules of section 601, subdivision (d). Nor do we consider this lack of differentiation an oversight. In subdivision (b) of the very same section, the Legislature *has* distinguished between corporations with more than 500 shareholders and those with less than 500 shareholders concerning the manner of sending notice of shareholders' meetings. We thus can only assume that the Legislature intended subdivision (d) to apply to all corporations regardless of size.

Our interpretation of section 601, subdivision (d) is supported by the strict construction that California courts have traditionally given to notice requirements for shareholder and director meetings.

In *San Buenaventura Mfg. Co.* v. *Vassault* (1875) 50 Cal. 534, the Supreme Court construed a statute which required trustees to be "'annually elected by the stockholders, at such time and place, and upon such notice . . . as shall be directed by the by-laws of the company.'" (*Id.*, at p. 537.) The corporation's bylaws stated that annual meetings were to be held on the third Monday in April at the company office. The court held this to be insufficient notice, because it did not tell "the *point of time during that day* at which the meeting is to be held." (*Id.*, original italics.) The court concluded that "it is highly important that the notice should be so definite and certain in its character as to leave no room for controversies such as the one now before us." (*Id.*, at p. 538; see also *Grant* v. *Hartman Ranch Co.* (1961) 193 Cal.App.2d 497, 501 [14 Cal.Rptr. 531].)

Similarly, in *Reed* v. *Wing* (1914) 168 Cal. 706 [144 P. 964], a regular meeting of the board of trustees of a municipal corporation "'adjourned to meet January 25, 1912.'" The Supreme Court held that "such a meeting is invalid unless the hour of assembling be specified in the motion to adjourn." (*Id.*, at p. 711; see also *Thompson* v. *Williams* (1888) 76 Cal. 153 [18 P. 153].)

■ The Olders contend, however, that even if notice of the adjourned meeting was required to be given, the Spencers waived any objections to the lack of notice by attending and participating in the adjourned meeting. On this issue, the trial court ruled against the Olders, concluding, "The SPENCERS did not waive any irregularities at the January 3, 1980, . . . special meeting of shareholders by participating in the business thereof under protest." We agree that there was no waiver.

Section 601, subdivision (e) provides in part, "Attendance of a person at a meeting shall constitute a waiver of notice of and presence at such meeting, *except when the person objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened . . . .*" (Italics added.) The record indicates that the Spencers fall directly within this exception. That the Spencers participated in the meeting after registering their objection does not require a different conclusion. Neither the statute nor logic prohibits a

shareholder from voting after objecting, thereby protecting his interests from the possibility that the objection will later be found ineffective. Nor are the cases cited by the Olders persuasive. Both *Guaranty Loan Co. v. Fontanel* (1920) 183 Cal. 1, 9 [190 P. 177], and *Shamel v. Lite Products Sales, Inc.* (1955) 131 Cal.App.2d 33, 36 [279 P.2d 1020], were decided well before the enactment of section 601, subdivision (e) and both relied upon other than statutory law in finding waivers of lack of notice objections.[8] To the extent that those cases would support the finding of a waiver under the present facts, they must be deemed obsolete in light of the subsequent enactment of section 601, subdivision (e).

We also reject the Olders' claim of laches on the part of the Spencers. The Spencers' section 709 complaint was filed only six months after the April 9 shareholders' vote which is at issue here. There is nothing in the record to indicate that this "delay" prejudiced the Olders in any way.

Because no notice was given of the adjourned special shareholders' meeting, the election conducted at that meeting is invalid. The election being invalid, Barbara Older was not an incumbent director at the April 9 annual shareholders' meeting.

### DISPOSITION

The judgment holding Barbara Older to be a holdover member of the board of directors of the Spencer Older Corporation is reversed. However, we will not, as the Spencers request, order the entry of judgment adjudging that Kenneth Coleman is a holdover director. There is insufficient evidence in the record to do so. As was mentioned earlier (see fn. 2, *ante*), the only thing in the record that indicates that Coleman was elected to the board prior to the April 9 annual shareholders' meeting is the declaration of Sam Spencer which relates the events of the January 3 special directors' meeting. The trial court has made no finding that this declaration is accurate, nor, in fact, that that meeting even took place. We therefore remand this case to the superior court to hold fur-

---

[8] At the time of the *Guaranty Loan* and *Shamel* cases, statutory law did not address at all the issue of mere attendance at a meeting as a waiver of inadequate notice. For example, when *Shamel* was decided, then section 2209 only stated that the transactions at a shareholders' meeting, "however called and noticed," were valid if, "either before or after the meeting, each of the persons entitled to vote, not present in person or by proxy, signs a written waiver of notice, or a consent to the holding of the meeting, or an approval of the minutes thereof." (Stats. 1947, ch. 1038, p. 2342.)

ther proceedings and to grant such relief as is consistent with this opinion.

Kaufman, J., and Trotter, J., concurred.

A petition for a rehearing was denied July 15, 1982.