Filed 1/26/15  Ballin v. Roosevelt Memorial Park Assn. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DORINA BALLIN, | B225679 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC061667) |
| v. | |
| ROOSEVELT MEMORIAL PARK ASSOCIATION, et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dudley Gray, Judge.  Affirmed.

Lurie, Zepeda, Schmalz & Hogan, Troy L. Martin and M. Damien Holcomb for Plaintiff and Appellant.

Mitchell Silberberg & Knupp, Kevin E. Gaut and Emily F. Evitt for Defendants and Respondents.

_____

In 2003, the Roosevelt Memorial Park Association's board of directors elected Dorina Ballin to serve as a director. Ballin was reelected to her position at each of the board's next five annual directors elections. In December of 2009, the board voted not to reelect her. Ballin filed an action under Corporations Code section 5617 arguing that the election should be invalidated because Roosevelt's bylaws did not permit the board to elect directors on an annual basis. After a bench trial, the court ruled Ballin had waived or was otherwise estopped from asserting her claims because she had previously participated in the disputed election procedures without objection. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Ballin's Complaint

The Roosevelt Memorial Park Association (Roosevelt) is a nonprofit public benefit corporation established to operate the Roosevelt Memorial Park cemetery. In 2003, Roosevelt's chairman, Fred Ballin, nominated his wife Dorina Ballin to serve as a director. During its annual regular meeting, Roosevelt's board of directors held a directors election and unanimously voted in favor of Dorina Ballin (Ballin). The board reelected Ballin to her directorship at annual directors elections held in 2004, 2005, 2006, 2007 and 2008.[1] Ballin participated in each such election without objection. At the board's 2009 election, however, Ballin was not reelected, terminating her tenure as a director.

Ballin filed an action under Corporations Code section 5617[2] to invalidate the 2009 election. Ballin's complaint alleged the board had voted not to reelect her because she had recently filed a breach of contract claim against the cemetery.[3] Ballin argued that

---

[1] As discussed in more detail below, the 2008 director's election was originally scheduled to occur November of 2008, but was postponed until April of 2009.

[2] Unless otherwise noted, all further statutory citations are to the Corporations Code.

[3] Ballin's breach of contract action, captioned *Dorina Ballin et al. v. Roosevelt Memorial Park Association*, Case No. YC060821, asserted that Roosevelt was wrongly

2

the board's practice of electing directors at its annual regular meeting (including the 2009 election) violated multiple provisions set forth in Roosevelt's bylaws.  First, Ballin argued that the bylaws provided that each director's term was for a period of three years, barring the board from holding elections each and every year.  Second, Ballin contended the bylaws only authorized Roosevelt's members, not its board, to elect the directors.[4] Third, she alleged that even if the election was proper, the bylaws required that she remain a director until Roosevelt's members held an election to appoint her replacement.

### B. Roosevelt's Bylaws and Corporate Minutes

#### 1. Ballin's version of Roosevelt's bylaws

Prior to trial, Ballin produced a copy of Roosevelt's bylaws which she asserted she had received from another director shortly after the 2003 election.  Article II of the bylaws sets forth provisions regarding Roosevelt's directors.  Article II, section 2 states that Roosevelt is "authorized" to have seven directors.  Article II, section 3, entitled "Election and Terms of Office," states:  "The Directors shall hold office for three years . . . . and the vacancies occurring in the Board of Directors by virtue of the expiration of their terms shall be filled as in these by-laws provided as such vacancies shall occur."  Section 4, titled "Vacancies," states:  "Vacancies in the Board of Directors may be filled by a majority of the remaining directors . . . and each director so elected shall hold office until his or her successor is elected. [¶] A vacancy or vacancies in the Board of Directors shall be deemed to exist in case of the death, resignation or removal of any directors, . . . or if the members fail at any annual or special meeting of members at

---

withholding funds that were due to her under an agreement it had entered into with her late husband, Fred Ballin.  The facts and claims at issue in the breach of contract action are not relevant to this appeal.

[4]    "Nonprofit public benefit corporations do not have shareholders.  [Citation]. Instead, they may (but are not required to) have members that are entitled to vote in the election of director . . . ."  (*Catholic Healthcare West v. California Ins. Guarantee Assn.* (2009) 178 Cal.App.4th 15, 27, fn. 9 [citing § 5056].)

which any director or directors are elected, to elect the full authorized number of directors to be voted for at that meeting."

Article II, section 6, titled "Organization Meeting," states: "Immediately following each annual meeting of members, the Board of Directors shall hold a regular meeting for the purpose of organization, election of officers, and the transaction of other business." Section 12, titled "Quorum," provides that "a majority of the authorized number of directors shall be necessary to constitute a quorum."

Article V of the bylaws govern Roosevelt's "members," which is defined to include "[e]very person of full age who is a duly qualified owner of record of one or more graves in Roosevelt Memorial Park cemetery." Article V, section 2, titled "Meeting of Members," provides that that an annual meeting of the members is to be held on the third Tuesday of every November. Sections 3 and 5 provide that each member is to have one vote in each election and that at least 51% of all members must be present to constitute a quorum.

### 2. *Roosevelt's "official" bylaws*

Roosevelt claimed that its "official" bylaws included an amendment that did not appear in Ballin's version. The amendment added article II, section 4(a) which states: "Notwithstanding the provision of Sections 3 and 4 of the bylaws the term of office of any director may be on a year to year basis or as a majority of the directors so decide at any duly held meeting" (hereafter the section 4(a) amendment). Roosevelt also provided an undated, handwritten note it had recovered from its corporate minutes binder that allegedly referred to the section 4(a) amendment. The note stated: "Amended sec 3, Part II. The Board in the alternative [indecipherable] chose to elect directors at its annual meeting to hold office until the following annual meeting."

Roosevelt argued this amendment was permitted under article V of the Articles of Incorporation, which authorizes the board "to adopt, amend, alter, change, add to repeal, or rescind and any all By-laws . . . from time to time as in its judgment shall be deemed

4

fitting and proper, without action or consent on the part of any person or persons whatsoever . . . ."

### 3. *Roosevelt's official minutes*

Roosevelt produced the corporate minutes from every annual members meeting and every annual board meeting that had been held since 1955. The minutes from every annual members meetings state that no quorum was present and therefore no business had been transacted. The minutes from the board's annual meetings held between 1955 and 1958 include identical language stating: "The Chairman called the meeting to order and stated that it would be necessary for the directors to carry on from the succeeding year because there was not a quorum present at the lot owners' meeting, and as a result thereof, no successor to the Board of Directors have been elected." The minutes from the board's annual meetings held between 1959 and 1972 do not include any language regarding the election of directors. The minutes from the board's meetings held between 1973 and 1990 include language stating that "all of the present directors were reelected to hold office for the ensuing year or until their successors are elected and qualified." The minutes from the board's meetings between 1991 and 2002 include similar language indicating that the board had nominated a group of between four and six individuals to serve as directors for the "ensuing year" and then voted to elect each of the nominees.[5]

The board's minutes indicate that it continued to follow this procedure after Ballin became a director. The 2003 minutes state that the board nominated Dorina Ballin and six other candidates to serve as directors for the ensuing year. The board then voted on the seven candidates (most of whom were current directors) and unanimously elected all of them. The minutes from the 2004 and 2005 meeting state that the board nominated and elected six people (Ballin and five other current directors) to serve as directors for the

---

[5]     Although Article II, Section 2 of the bylaws authorizes up to seven directors, the minutes reveal that during most years Roosevelt operated with between four and six directors.

ensuing year.**6**  The minutes from the 2006 and 2007 meetings state that the board nominated and elected five people (Ballin and four other current directors) to serve as directors for the ensuing year.  The minutes from the 2008 board meeting, which was held in November, state that the 2008 annual member meeting had not yet been held and, as a result, the board's "election of . . . directors" needed to be postponed.  Minutes from a special board meeting held on April 25, 2009 state:  "[President and Director Michael G. Smith] noted the positions of the . . . Directors in the past have been reelected annually at the Board Meeting in November to serve for a one year term."  The notes further state that each of the six current directors (including Ballin) were then nominated and reelected to serve for the ensuing year.

The minutes of the 2009 regular meeting, held in December, state that Ballin had objected to the official minutes of the April 2009 special meeting.  Ballin contended the minutes failed to note she had objected to the April 2009 elections on the basis that "directors serve for three-year terms."  According to the minutes, Malcolm Smith "reminded [Ballin] that as per . . . Fred Ballin's past practices, the officers and directors were elected every year.  This was his policy."  In response, Ballin stated "Directors are elected for a three year term. [Smith] asked if she was proposing we adopt a practice of electing directors to the board for a three year term as opposed to the yearly election we have done for decades.  [Ballin] stated she doesn't know what we are doing with the annual elections.  [Director Robert Letteau] stated she could not be a director as she was suing the cemetery for her own personal gain."  Smith then nominated a list of directors that did not include Ballin; no other director nominated Ballin.  The list was unanimously approved by the sitting directors, thereby terminating Ballin's directorship.

---

**6**　　The 2004 minutes do not specifically reference an "election"; the notes state only that Roosevelt's president had nominated a slate of directors and that the board unanimously approved all of the nominations.

6

### C. The Parties' Trial Briefs

#### 1. Ballin's trial brief

Ballin's trial brief argued that the evidence would show that Roosevelt's board became hostile toward her immediately after her husband, the former chair of Roosevelt, had died in 2006. According to the brief, Roosevelt's "hostility culminated at an annual meeting of the Board Directors on December 12, 2009, at which Defendants purported to hold an illegal election of Directors in which all Directors were reelected but . . . Ballin." As in her complaint, Ballin asserted the election was illegal because "she had last been elected in April of 2009" and therefore "had at least two more years on her [three year] term." In support, she cited to article II, section 3 of the bylaws, which states that each director shall hold office for three years.

Ballin acknowledged that Roosevelt intended to argue that the "official" bylaws had been amended to add section 4(a), which permits the board to set the directors' terms at one year rather than three years. Ballin argued the court should "disregard" the section 4(a) amendment because the corporate minutes did not indicate whether the board had ever voted to approve the amendment. Ballin also argued Roosevelt was not permitted to rely on its past conduct to prove the amendment had been adopted. According to Ballin, California law prohibited the amendment of corporate bylaws based solely on past "custom and practice."

Ballin also asserted the board's practice of holding annual directors elections was "contrary to" provisions in the bylaws that required Roosevelt's members, rather than its board, to elect directors. Ballin argued that article II, section 3 only permitted the board to elect directors if the annual members meeting resulted in an election at which less than seven directors were elected. Ballin contended that if the members held such an election at their annual meeting, the board was then permitted to elect directors for any of the seven positions the members had failed to fill. Ballin further contended, however, that if the members did not hold an election at their annual meeting, the board had no authority to elect directors and the existing directors automatically retained their positions until the following members meeting. Ballin asserted that because the members had not held an

election at their 2009 annual meeting (due to lack of quorum), the board had no authority to hold the directors election that followed in December of 2009.

Finally, Ballin asserted that even if board had acted appropriately in holding an annual directors election, she was nonetheless entitled to continue serving as a director until the board elected her successor. In support, she cited language in section four of the bylaws stating: "Vacancies in the Board of Directors may be filled by a majority of the remaining directors . . . and each director so elected shall hold office until his or her successor is elected."

Ballin's trial brief requested that the court "order that she remain a [d]irector until her term of office expires and Roosevelt's Members elect a successor to fill her vacancy."

2. *Roosevelt's trial brief*

Roosevelt's trial brief admitted that, under the bylaws, Roosevelt's members were initially responsible for electing directors at the annual members meeting. It argued, however, that under the language of article II, section 3, the board was permitted to elect directors whenever the members failed to hold an election at their annual meeting. Roosevelt argued this interpretation was supported by the corporate minutes, which demonstrated the board had been following this practice for over 30 years.

Roosevelt also argued that the following evidence showed the section 4(a) amendment was valid: (1) Roosevelt's secretary had provided written certification that the version of the bylaws containing the amendment reflected Roosevelt's "official" bylaws; (2) Roosevelt's corporate minutes binder contained a note written by Fred Ballin referencing the amendment; and (3) the corporate minutes and witness testimony showed the board had been holding elections each and every year for the past several decades.

Roosevelt contended that even if Ballin was able to show the board's election procedures conflicted with the bylaws, she was precluded from challenging those procedures because she had participated in annual directors elections "each year without objection" until "2009 – the year she was not re-elected." Roosevelt asserted that "by

8

participating in each annual election since 2003," Ballin had "waived" or was otherwise "estopped" from asserting her challenge to those procedures.

### D. Trial

Three witnesses testified at the bench trial: Roosevelt's general manager and secretary, Kathleen McLaughlin; plaintiff Dorina Ballin; and Roosevelt's current president and chairman, Malcolm Smith.

McLaughlin testified that she had been maintaining Roosevelt's corporate records since 1991. She stated that the copy of the bylaws Roosevelt had produced for trial (which included the section 4(a) amendment) were kept in a minute book within a vault at the cemetery. McLaughlin stated that, in her experiences, Fred Ballin had always relied on this copy when "he wanted to determine the official bylaws." McLaughlin also testified about the handwritten note that referenced the section 4(a) amendment. She stated that the note appeared in volume 2 of Roosevelt's official minutes book, which included materials from the 1970s. She also testified that the note appeared to be in Fred Ballin's handwriting. She admitted, however, that the official corporate minutes did not include any statements indicating whether the board had adopted the section 4(a) amendment.

McLaughlin also testified that, during her time as secretary, Roosevelt had held an annual members meeting every November but that a quorum was never present. Roosevelt provided notice of the annual members meeting by placing an informational pamphlet in the glass display case located in the entryway to the offices located at the cemetery. She further testified that she had attended every regular meeting of the board of directors since 1991 and that at each such meeting (with some limited exceptions due to lack of quorum) the board had conducted a directors election "for a period of one year." McLaughlin also testified that Ballin had never objected to this election process at any time prior to December of 2009.

Dorina Ballin testified that Fred Ballin had nominated her as a director in 2002 and that the board had elected her to the position in 2003. Shortly after her election,

9

co-director Robert Letteau provided her a copy of Roosevelt's bylaws that did not contain the section 4(a) amendment. Ballin confirmed Roosevelt had held an annual members meeting every year she was a director, but that no action was taken at those meetings because "nobody showed up." She also confirmed that after each members meeting the board held its regular meeting and conducted a directors election. Ballin stated that she had personally participated in and been reelected at annual directors elections the board had held in November of 2004, 2005, 2006 and 2007. Ballin testified the board had postponed its 2008 regular meeting "because for some reason [the board's regular] meeting had been scheduled before the [members] meeting." After the 2008 members meeting was completed (which resulted in no quorum), the board held its meeting and annual directors election in April of 2009.

Ballin testified that during the April 2009 board meeting, she informed the other directors the election was "illegal" because the bylaws stated each director's term was for three years. She further asserted that chairman Malcolm Smith told her Roosevelt's past practice had been to elect its directors to one year terms at the annual November board meeting. Ballin also stated that, immediately prior to the board's director election in December of 2009, she filed an objection to the minutes of the April 2009 meeting because they did include her comments about the illegality of the April 2009 election. She then attended the December 2009 board meeting, where she was not reelected.

On cross-examination, Ballin admitted she had read her copy of the bylaws shortly after receiving them from director Letteau in 2003. She also admitted that during a prior deposition, she had stated that she believed in 2003 that each director's term was for three years rather than one year. Despite this belief, she participated in and was reelected at annual directors elections in 2003, 2004, 2005, 2006, 2007 and 2009. She also confirmed that "[she] never raised any issue about whether directors had to be elected for three years" until 2009.

Roosevelt's current chairman, Malcolm Smith, testified that he became a director in 1991. Smith stated that during his entire period of service, Roosevelt's directors had always been elected by the board to one-year terms. According to Smith, the "elections

10

for board members were by the board because there never seemed to be a quorum of any members. And it was for a one-year period until the next meeting of the board which was on an annual basis." Smith stated that Ballin never objected to the election process or the one-year term at any time prior to December of 2009.

At closing argument Ballin's counsel cited several reasons the board's December of 2009 election should be invalidated. First, counsel argued the language of the bylaws made clear that if the members failed to hold an election at their annual members meeting "all the directors must continue to serve for another year until the next [members] meeting." Second, counsel argued that even if the board had authority to hold an election when the members failed to do so, the bylaws plainly stated that the term of each director was for three years, meaning that Ballin's election in April of 2009 had to continue until at least April of 2012. Counsel asserted the purported "amendment" adding section 4(a) was not effective because there was no evidence the board had adopted the provision at a regular meeting. Third, counsel argued that even if the board was permitted to hold annual directors elections, Ballin was entitled to remain as a director until her successor was selected. Fourth, counsel argued that the evidence at trial showed Roosevelt did not provide its members adequate notice of the annual members meeting.[7]

Ballin's counsel also argued that the defenses of waiver and estoppel were inapplicable because Roosevelt had failed to demonstrate that Ballin had knowingly given up her right to challenge the election proceedings; that Ballin had personally benefitted from the board's annual directors election process; or that Roosevelt had "changed its position" based on Ballin's failure to object to the election process.

At the close of the evidentiary hearing, the court rejected each of these arguments and ruled in favor of Roosevelt: "Whether you invoke any or all of the doctrines of waiver, estoppel or ratification or custom and practice, the only logical and sensible outcome here is that the election that was conducted is valid. And so with that, I find in

---

[7] Ballin's complaint does not include any allegations regarding the manner in which Roosevelt had notified its members of their annual meeting. Ballin's trial brief only references the issue in a footnote.

11

favor of the defense. It is hard to ignore the fact that for many, many many years this is the way things were done. It [is] hard to ignore the fact that for many, many years the plaintiff herself participated in exactly this procedure. . . . So with that, judgment is for the defense and the results of the election remain." On May 4, 2010 the court entered a judgment in favor of Roosevelt stating: "The election of directors conducted by the Roosevelt Board of Directors on December 12, 2009, including their decision not to reelect Plaintiff Dorina Ballin as a Director of Roosevelt, is determined to have been valid and proper."

**DISCUSSION**

Ballin argues the trial court erred in confirming the results of the election. According to Ballin, the bylaws make clear that the board may only hold a directors election if the "[m]embers have a quorum [at their annual meeting] and elect at least one director, but less than seven directors . . ." Thus, under Ballin's theory, the board has no authority to hold a directors election when Roosevelt's members fail to hold an election for lack of quorum. Ballin also argues the court should not have confirmed the election because the trial evidence showed that: (1) the section 4(a) amendment, which gave the board discretion to set director terms to one year, was never validly adopted; (2) Roosevelt did not provide its members sufficient notice of the annual members meetings; and (3) even if the election was valid, section four of the bylaws entitled Ballin to remain in her position as director until her successor was nominated and elected.

Roosevelt argues that the court did not misinterpret the bylaws, that the evidence at trial showed the board did adopt the section 4(a) amendment and that Ballin failed to prove Roosevelt's notice of the annual members meeting was insufficient. Roosevelt further contends that even if the board's election procedures did conflict with the bylaws or were otherwise improper, Ballin has failed to present any argument explaining how the court erred in concluding she waived or was otherwise estopped from asserting any claim predicated on the defective procedures.

12

### A. Summary of Statutes Authorizing Challenges to Corporate Elections

Section 5617 of the Nonprofit Public Benefit Corporation Law (see §§ 5110-6910) permits any "director," "member" or "any person who had the right to vote in the election at issue" to file an action to "determine the validity of any election or appointment of any director of any corporation."[8] (§ 5617, subd. (a).) The statute requires the court to set a hearing on the complaint within five days "unless for good cause shown a later date is fixed." (§ 5617, subd. (c).) Subdivision (d) provides that "the court, consistent with the provisions of the [Nonprofit Public Benefit Corporation Law] and in conformity with the articles and bylaws to the extent feasible, may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, may determine the validity of the issuance of memberships and the right of persons to vote and may direct such other relief as may be just and proper."

Section 709 of the General Corporation Law (see § 100) provides an "equivalent" remedy to shareholders of "for profit" corporations. (See *Ferry v. San Diego Museum of Art* (1986) 180 Cal.App.3d 35, 44 fn. 6 [describing section 5617 as the "equivalent" of section 709's predecessor statute, former Corporations Code section 2238]; *Greb v. Diamond Intern. Corp.* (2013) 56 Cal.4th 243, 257 (*Greb*) ["business (for profit) corporations" are governed by "the General Corporation Law, sections 1-2319"].) Like section 5617, section 709 authorizes the court to "determine the person entitled to the office of director," "order a new election to be held or appointment to be made" and "direct such other relief as may be just and proper." Section 709 is a successor statute to former Civil Code section 315 and former Corporations Code sections 2236-2238, which contained substantially similar language. (See § 709, Historical and Statutory Notes [identifying former §§ 2236 to 2238 and former Civil Code § 315 as predecessor statutes]; *Morrical v. Rogers* (2013) 220 Cal.App.4th 438, 453-454 (*Morrical*) [describing former Civil Code § 315 and § 2238 as predecessors to § 709]; *Columbia*

---

[8]    The parties do not dispute that Roosevelt is a nonprofit public benefit corporation and that this action was properly brought pursuant to section 5617.

*Engineering Co. v. Joiner* (1965) 231 Cal.App.2d 837, 842-844 (*Columbia Engineering*) [discussing former Civil Code § 315 and Corporations Code §§ 2236-2238].)[9] Because sections 709 and 5617 relate to the same subject matter (challenges to corporate elections) and contain substantially similar wording, we look to cases that have interpreted section 709 and its predecessors to inform our interpretation of section 5617. (Cf. *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 642 ["we interpret a statute in context, examining other legislation on the same subject, to determine the Legislature's probable intent"].)

"An action to defeat a corporate election is a broad-based equity action in which the court may examine the entire transaction without being limited to technical or procedural issues and may adjust the rights of the parties to do justice among them." (*Goss v. Edwards* (1977) 68 Cal.App.3d 264, 271 [applying former § 2236]; *Lawrence v. I. N. Parlier Estate Co*. (1940) 15 Cal.2d 220, 227 (*Lawrence*) ["an action under [former] Civil Code section 315 is in the nature of an equitable proceeding in which the court will consider . . . all matters necessary to a just direction of the relief required in each instance"]; *Morrical, supra*, 220 Cal.App.4th at p. 451 ["It is well established that section 709 and its predecessor statutes afford an equitable cause of action"].) Sections 5617 and 709 are designed to allow the "court . . . to proceed in a summary manner to test the title of directors to office without recourse to the slow and cumbersome proceeding of quo warranto.'" (*Shahin v. Wawro* (1982) 136 Cal.App.3d 749, 753.) These remedial statutes provide "[t]rial courts . . . a free hand to enable them to make such orders or grant such relief as justice may require. In the exercise of the power thus conferred, trial judges must be allowed wide discretion, for they are expressly required to 'proceed in a summary way.' They may and ought to be governed by equitable principles and should deal with cases arising under the statute in accordance with substantial right and justice,

---

[9]     Prior to the passage of the Nonprofit Public Benefit Corporation Law (including section 5617), nonprofit corporations were subject to the election provisions set forth in section 709's predecessor statutes. (*Braude v. Havenner* (1974) 38 Cal.App.3d 526, 530 [prior to the passage of the Nonprofit Public Benefit Corporation Law, nonprofit corporations were subject to section 709's predecessor, former § 2283].)

14

but they must not be bound to any hard and fast legal or equitable rules." (2 Fletcher Cyc. Corp. § 370 [*citing Lawrence, supra,* 15 Cal.2d 220]; see also *Greb, supra,* 56 Cal.4th at p. 266, fn. 31 [describing Fletcher as "leading treatise" on corporations law].)

Given the equitable nature of the proceedings, traditional equitable defenses such as estoppel, waiver, laches and unclean hands are generally available in an action challenging a corporate election. (See *Goss, supra*, 68 Cal.App.3d at p. 271 [summarizing cases recognizing that estoppel and laches are proper defenses in action challenging corporate election]; *Boericke v. Weise* (1945) 68 Cal.App.2d 407, 417-418 (*Boericke*) [equitable defenses of estoppel and clean hands available]; *Columbia Engineering, supra*, 231 Cal.App.2d 837 ["estoppel, laches [and] waiver" are generally available as defenses in challenge to corporate election]; 2A Fletcher Cyc. Corp. § 785 [corporate officers and directors "may be estopped by [their] own acts or conduct"].) For example, in *Shamel v. Lite Products Sales* (1955) 131 Cal.App.2d 33 (*Shamel*), the plaintiff brought an action under former section 2236 challenging a director election based on procedural irregularities. The court concluded, however, that the plaintiff was prohibited from asserting such claims because he had "attended the meeting[,] . . . nominated directors and voted therefor." (*Id*. at p. 36.) The court explained that "[s]uch active participation must be deemed, as the trial court indicated, a waiver of any preceding irregularities. That the election did not result as appellant might have desired is of no importance." (*Ibid*.) *Shamel* is illustrative of the general rule that "the validity of the election of directors . . . cannot be questioned by . . . a director who has participated in the selection of the board and subsequently attempts to question the manner of choosing directors." (2 Fletcher Cyc. Corp. § 293.)

### B. Ballin Has Failed to Demonstrate the Court Erred in Applying the Doctrines of Waiver and Estoppel

The trial court's judgment was grounded in part on its finding that Ballin had waived or was otherwise estopped from asserting any challenge to the board's election

15

procedures because she had personally participated in (and been reelected under) those same procedures for years without objection.

In the "standard of review" section of Ballin's opening brief, she acknowledges that the "trial court based its judgment upon Roosevelt's claims of waiver . . . and/or estoppel." Ballin also acknowledges that "'[g]enerally, the determination of either waiver or estoppel is a question of fact, and the trier of fact's finding is binding on the appellate court." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319; see also *Boericke*, *supra,* 68 Cal.App.2d at p. 418 [whether estoppel precluded plaintiff's challenge to corporate election "was a question of fact"].) The "legal argument" section of her brief, however, does not address these doctrines. Instead, her brief presents four primary arguments: (1) the court's ruling conflicts with Roosevelt's bylaws, which do not permit the board to hold annual directors elections; (2) Roosevelt could not amend its bylaws through its custom and practice of holding annual elections; (3) Roosevelt did not provide its members adequate notice of the annual members meeting; and (4) Roosevelt should have permitted Ballin to remain in her director position until her successor was elected. These arguments, all of which relate to Roosevelt's conduct, have no relevance to waiver or estoppel, which relate to Ballin's conduct. (See generally Civ. Code, § 3516 ["Acquiescence in error takes away the right of objecting to it"]; *John H. Spohn Co. v. Bender* (1937) 18 Cal.App.2d 447, 451 ["estoppel does not make valid the thing complained of but merely closes the mouth of the complainant"].)

"Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.) Although Ballin acknowledges estoppel was one ground cited in support of the judgment,

16

her opening and reply briefs do not present any legal analysis on the issue of estoppel. She has therefore failed to demonstrate the trial court erred in relying on the estoppel defense.[10]

Ballin has also failed to demonstrate the court erred in concluding she waived any challenge to the election irregularities by participating in those same procedures for years without objection. Ballin's brief provides two arguments that reference the issue of waiver. First, in a single paragraph Ballin argues waiver is inapplicable because the record contains no evidence supporting the trial court's finding that "Ballin . . . participated in annual elections." According to Ballin, the evidence showed only that "she, like every other director, simply engaged in a practice . . . of allowing the current Board to serve for the ensuing year until the Members could meet and elect their successors." This argument is without merit. The record contains overwhelming evidence that Ballin participated in an annual election process whereby the board nominated a slate of between five and seven nominees to serve as directors for the ensuing year and then voted on whether to approve those nominees. At trial, Ballin acknowledged that Roosevelt's board held a directors election at its annual meeting "every year" and that she "went to annual directors meeting in 2003, 2004, 2005, 2006 and 2007 at which [she was] reelected." McLaughlin and Smith likewise testified that the board elected a slate of directors every year and that Ballin had participated in and been reelected at several such elections. The corporate minutes show that each year Ballin was a director, the board nominated a group of between five and seven people to serve as directors for the ensuing year. The board then held an election on those candidates. The trial evidence therefore unequivocally supports the court's finding that

---

**10** We express no opinion as to whether the evidence or circumstances of this case would in fact support a finding of estoppel. We merely hold that, having presented no argument on the issue, Ballin has failed to demonstrate that the trial court erred.

17

Ballin did in fact attend and participate in numerous annual directors elections without objection.[11]

Ballin next argues that the waiver doctrine is inapplicable because the board had no authority to "waive" provisions of its bylaws through its "custom and practice" of holding annual directors elections. In support, Ballin cites and discusses *Powers v. Marine Engineers' Beneficial Assn. No. 35* (1921) 52 Cal.App. 551, which addresses whether corporate bylaws may be created or adopted based solely on usage and custom. This argument, however, does not address the court's finding that Ballin had personally waived her right to challenge the election proceedings by "participat[ing] in exactly this procedure" without objection "for many, many years." Even if Ballin is correct that the election procedures conflicted with the bylaws and that the board could not "waive" the bylaws through its customs and practices, she has presented no argument explaining how the court erred in concluding her prior conduct demonstrated she had acquiesced in those

---

[11]     At oral argument, Ballin's counsel emphasized that even if principles of waiver or estoppel precluded her from challenging the board's use of annual directors elections, the bylaws nonetheless entitled her to remain in her director position until the board nominated and elected her successor. Counsel failed to explain, however, why the trial court erred in concluding that Ballin had waived or was otherwise estopped from asserting this particular argument (which was presented at trial) by participating in an election process whereby a panel of individuals were nominated and elected to serve as directors for the ensuing year. As explained above, the evidence shows that the number of directors the board nominated and elected to serve for the ensuing year fluctuated between four people (the minimum number of directors necessary for a quorum) and seven people (the maximum number of directors authorized under the bylaws). The board was thus comprised solely of those individuals who were nominated and elected at the prior annual directors election even if that number was less than the maximum number of directors authorized under the bylaws (seven). The trial court apparently reasoned that by having engaged in this election process for years, Ballin could not now argue that any active director who was not nominated and elected to serve for the ensuing year was nonetheless permitted to remain in the position until his or her successor was appointed.

18

procedures, thereby waiving her ability to challenge their legality.  (See Civil Code, § 3516)[12]

## DISPOSITION

The trial court's judgment is affirmed.  Respondents shall recover their costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.

FEUER, J.[*]

---

[12]    Because Ballin has failed to demonstrate the court erred in applying waiver or estoppel, we need not address Roosevelt's alternative contention that the issues raised in this appeal are now moot because the corporation recently eliminated all of its members and established new election procedures as part of a bankruptcy reorganization.  The reorganization plan includes a provision stating that, under the new procedures, Ballin may not be appointed to serve as a director "unless the State Court action results in a determination that [Ballin's] previous term on [the board] had not expired as of the date advocated by [Roosevelt] in the State Court Action."

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.